UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA,         :
                                  :
            - v. -                :          07 Cr. 822 (SCR)
                                  :
HECTOR BARRERAS,                  :
                                  :
                                  :
            Defendant.            :
                                  :
                                  :
                                  :
- - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTION**


                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              One St. Andrew's Plaza
                              New York, New York 10007

Nicholas L. McQuaid
Assistant United States Attorney
     -Of Counsel-

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Offense Conduct . . . . . . . . . . . . . . . . 1

ARGUMENT

    I.   BARRERAS'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND
    POST-ARREST STATEMENTS REQUIRE A HEARING . . . . . . . . 3

        A.   Applicable Law Regarding the Stop of Barreras's
        Car . . . . . . . . . . . . . . . . . . . . . 4

        B.   Applicable Law Regarding the Search of Barreras's
        Car . . . . . . . . . . . . . . . . . . . . . 9

   II.  AFTER AN EVIDENTIARY HEARING, THE COURT SHOULD FIND
       THAT BARRERAS'S STATEMENTS ARE ADMISSIBLE . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 14

## PRELIMINARY STATEMENT

The United States of America respectfully submits this memorandum of law in opposition to the pretrial motion of defendant Hector Barreras.

Defendant Hector Barreras asks this Court for an order suppressing physical evidence seized from Barreras on or about July 23, 2007 after the car he was driving was stopped, and suppressing statements made to law enforcement officers or a suppression hearing. The Government consents to an evidentiary hearing regarding the motion to suppress evidence seized on July 23, 2007 and the admissibility of the defendant's statements.

## BACKGROUND

### A.  Offense Conduct

The one-count Indictment charges Barreras with conspiring to violate Sections 812, 841(a)(1), and 841(b)(1)(A) of Title 21, United States Code, by distributing and possessing with intent to distribute more than five kilograms of cocaine in or about July 2007, in violation of Section 846 of Title 21, United States Code.  See Indictment ("Exhibit A").

The defendant was arrested on July 23, 2007.  According to the Complaint, on or about July 23, 2007, agents of the Drug Enforcement Administration ("DEA") attempted to locate an individual suspected of narcotics trafficking ("the Suspect") in

1

Yonkers, New York.  <u>See</u> Complaint ("Exhibit B") ¶ 2.  When the
agents attempted to approach a black Audi they believed to be
driven by the Suspect, the car sped away, in the process striking
two agents' cars and several parked cars before crashing.  <u>See</u> <u>id.</u>
The Suspect then fled on foot.  <u>Id.</u>

Later the same day, DEA agents conducted surveillance
in the vicinity of what they believed to be the Suspect's
residence.  <u>See</u> <u>id.</u> ¶ 3.  When one of the surveillance team
members, a DEA Taskforce Officer("Taskforce Officer"), first
arrived at the surveillance location in an unmarked vehicle, he
observed a man, later identified as Hector Barreras, the
defendant, sitting in a parked Toyota Avalon at the rear of the
building under surveillance.  <u>See</u> <u>id.</u>  The Taskforce Officer
noticed that Barreras was staring at him and saw Barreras turn
his head to watch where the Taskforce Officer went.  <u>See</u> <u>id.</u>
When the Taskforce Officer passed the parking lot a second time,
he noticed that Barreras was still sitting in the Toyota Avalon
and that Barreras again stared at him and turned to watch where
he went.  <u>See</u> <u>id.</u>  Shortly thereafter, the Taskforce Officer
observed Barreras drive out of the parking lot and pass by his
car.  <u>Id.</u>  When Barreras passed by, the Taskforce Officer noted
that Barreras was not wearing a seatbelt.  <u>Id.</u>

The Taskforce Officer and another member of the
surveillance team followed Barreras and stopped his car.  <u>See</u>

2

id. ¶ 4.  On the back seat of the car was an orange bag.  Id.
The Taskforce Officer asked Barreras what was in the bag.
Barreras responded that the bag contained sneakers and that the
officer could look inside the bag.  See id.  The Taskforce
Officer looked inside the bag and found approximately 5.67
kilograms of a powdery substance that subsequently field tested
positive for cocaine.[1]  See id.  Barreras was then arrested.  Id.

## ARGUMENT

### I.  BARRERAS'S MOTION TO SUPPRESS PHYSICAL EVIDENCE REQUIRE A HEARING

Barreras seeks to suppress all physical evidence that
was recovered from the car he was driving including the cocaine.
See Barreras Pretrial Mot. at 7, 9, 13.  The Government consents
to an evidentiary hearing on this issue, and anticipates that the
evidence will show that the stop of Barreras's car was justified
by both reasonable suspicion of illegal activity related to the
Suspect and reasonable suspicion of a traffic violation, and that
law enforcement used an appropriate amount of force in executing
the stop.  The evidence will also show both that Barreras
consented to the search of the bag in his car and that regardless
of whether Barreras consented, there was probable cause that
warranted the search.

_____

[1] Subsequent testing determined that the net weight of the
cocaine found in the bag was exactly 5 kg.

**A.    Applicable Law Regarding the Stop of Barreras's Vehicle**

A police officer may conduct a brief "investigative detention" or "<u>Terry</u> stop" by stopping a person to investigate possible criminal behavior, as long as at the time the officer effects the stop, the officer has "'reasonable suspicion' to believe that criminal activity has occurred or is about to occur." <u>United States v. Tehrani</u>, 49 F.3d 54, 58 (2d Cir. 1995) (citing <u>United States v. Glover</u>, 957 F.2d 1004, 1008 (2d Cir. 1992)); <u>see also</u> <u>United States v. Elmore</u>, 482 F.3d 172, 178 (2d Cir. 2007) (same).  Reasonable suspicion arises when law enforcement officers are "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion."  <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 884 (1975).

"Reasonable suspicion" is measured by an objective test, <u>Glover</u>, 957 F.2d at 1010, and reviewing the circumstances as a whole, not as discrete and separate facts, <u>United States v. Barlin</u>, 686 F.2d 81, 86 (2d Cir. 1982); <u>see also</u> <u>United States v. Villegas</u>, 928 F.2d 512, 516 (2d Cir. 1991) ("Conduct as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity.").  The test for reasonable suspicion is "rather lenient," <u>United States v. Santana</u>, 485 F.2d 365, 368 (2d Cir. 1973), and the Second Circuit has explained that it is "not

4

a difficult one to satisfy." United States v. Oates, 560 F.2d 45, 63 (2d Cir. 1977).   Under the "reasonable suspicion" standard, "the likelihood of criminal activity . . . falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002). As the Supreme Court emphasized in Alabama v. White, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause [and] can arise from information that is less reliable than that required to show probable cause."  496 U.S. 325, 330 (1990).

        Moreover, reasonable suspicion is measured from the objective perspective of a trained and experienced law enforcement officer.  United States v. Cortez, 449 U.S. 411, 418 (1981); United States v. Forero-Rincon, 626 F.2d 218, 222 (2d Cir. 1980).  The reasonable suspicion analysis "does not deal with hard certainties, but with probabilities," and properly takes into account that trained law enforcement agents may make observations and draw conclusions that go beyond the capacity of a lay person.  Cortez, 449 U.S. at 418; Villegas, 928 F.2d at 517 (suspicion reasonable if appears suspect to trained observer); see also Ornelas v. United States, 517 U.S. 690, 699-700 (1996) (while ultimate review of reasonable suspicion determination is de novo, deference should be given to experience of police officers involved).

Reasonable suspicion may be based on a variety of factors, including an individual's presence in a high-crime neighborhood, "nervous, evasive behavior," and "unprovoked flight upon noticing the police." Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000); United States v. Welbeck, 145 F.3d 493, 498 (2d Cir. 1998) (stop justified by, inter alia, defendant's "evident alarm and evasive behavior" after being alerted to police presence"). In short, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." Wardlow, 528 U.S. at 125.

A violation of vehicle and traffic laws ("VTL") may give rise to a valid stop under the Fourth Amendment whenever the officers have probable cause or a reasonable suspicion, based on specific and articulable facts, of such an infraction. United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994); see Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005) ("The Fourth Amendment requires that an officer making such a stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.").[2] A VTL infraction, no matter how minor, qualifies as "unlawful conduct" for purposes of the reasonable suspicion inquiry. Id.

---

[2] Pursuant to New York Vehicle and Traffic Law, Section 1229-c (3), "[n]o person shall operate a motor vehicle unless such person is restrained by a safety belt . . . ."

6

The constitutionality of traffic stops based on VTL infractions are assessed under a "wholly objective 'authorization' test," according to which a stop will be deemed valid as long as the officer possessed legal authority in State or municipal law to conduct it. Id. at 783. The question is whether "the officer could validly have made the stop, [not] whether under the same circumstances a reasonable officer would have made the stop." Id. at 782 (citation omitted) (emphasis in original).[3] "[T]he 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis." Holeman, 425 F.3d at 190 (quoting Whren v. United States, 517 U.S. 806, 813 (1996)).

Finally, a Terry stop may ripen into an arrest, which must be supported by probable cause, if "the officers unreasonably used means of detention that were more intrusive than necessary." United States v. Perea, 986 F.2d 633, 645 (2d Cir. 1993).[4] Among the factors to be considered in assessing

---

[3] Because the standard applied is objective, in assessing a stop based on a VTL infraction, it does not matter whether the stop is pretextual. Holeman, 425 F.3d at 190 n. 1; see also Scorpo, 19 F.3d at 783. "[A]n observed traffic violation legitimates a stop even if the detectives do not rely on the traffic violation." United States v. Dhinsa, 171 F.3d 721, 725 (2d Cir. 1998); see also Holeman, 425 F.3d at 190.

[4] The is no dispute that Barreras was placed under arrest after cocaine was discovered in the car. See Complaint ¶ 4. The defendant contends that he was placed under defacto arrest before the search based on the conduct of law enforcement officers in executing the stop. See Barreras Pretrial Mot. at 9-10.

7

"whether the degree of restraint was too intrusive to be classified as an investigative detention," id. (citations omitted), are:

> the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, . . . and in particular such factors as the number of agents involved, . . . whether the target of the stop was suspected of being armed, . . . and the physical treatment of the suspect, . . . including whether or not handcuffs were used.

Id. (citations omitted).  The Second Circuit has stressed, however, that there are no "hard and fast rules for evaluating the conduct of law enforcement agents conducting investigative stops."  United States v. Alexander, 907 F.2d 269, 272 (2d Cir. 1990).

At the suppression hearing the Government anticipates that the evidence will show that the stop of Barreras's car was justified based on reasonable suspicion that Barreras was engaged in illegal activity connected to the Suspect and on reasonable suspicion that Barreras had violated New York vehicle and traffic laws by failing to wear a seat belt while operating a motor vehicle.  The Government also anticipates that the evidence will show that the means of detention used by law enforcement officers in stopping Barreras were reasonable and that the investigative

8

stop did not ripen into an arrest until Barreras was formally arrested.[5]

### B.    Applicable Law Regarding the Search of Barreras's Car

"Even after a lawful traffic stop, the Fourth Amendment protects against warrantless searches absent 'specifically established and well-delineated exceptions.'  One such exception is consent by the party whose property or person is to be searched."  Holeman, 425 F.3d at 191 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).

Consent, which may be express or implied, is a voluntary waiver of Fourth Amendment rights, and waiver need not necessarily be knowing and intelligent.  Schneckloth, 412 U.S. at 235, 241; United States v. Garcia, 56 F.3d 418, 422-23 (2d Cir. 1995).  This is because the Fourth Amendment only prohibits "unreasonable" searches and seizures, and the concept of a "knowing and intelligent waiver, which is strictly applied to rights involving a fair criminal trial, does not govern" in the search context.  Garcia, 56 F.3d at 422 (citations omitted).[6]  To

---

[5] Should the Court conclude that the stop of Barreras's car did ripen into an arrest before the formal arrest, as Barreras suggests, Barreras Pretrial Mot. at 8-11, the Government anticipates that the evidence adduced at the hearing will also satisfy the more demanding probable cause standard and that the actions of law enforcement officers were therefore reasonable for purposes of the Fourth Amendment.

[6] Accordingly there is no requirement that law enforcement officers advise a defendant of his right to refuse consent, or of the possible consequences of a search, prior to seeking consent.

determine whether consent was voluntarily given, courts examine
the totality of the circumstances surrounding the consent.
Schneckloth, 412 U.S. at 227; Anobile v. Pelligrino, 303 F.3d
107, 124 (2d Cir. 2004).  The factors used to determine whether
express consent is voluntary include the individual's knowledge
of his right to refuse consent, his age, his intelligence and
education, the length and the nature of questioning, or the
presence of coercive police behavior.  Schneckloth, 412 U.S. at
226-27.[7]  Generally, no one factor will be sufficient on its own
to merit a finding of involuntariness. See id.

       Even if consent is not found, a search may still be
valid if the searching officers had probable cause to believe
that the vehicle contained contraband or evidence of a crime.
See United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004)
("Under the 'automobile exception' to the Fourth Amendment
warrant requirement, police may conduct a warrantless search of a
readily mobile motor vehicle if probable cause exists to believe
the vehicle contains contraband or other evidence of a crime.").
Probable cause to conduct a warrantless search of an automobile

---

Garcia, 56 F.3d at 422-23.

       [7] The fact that a defendant was not given Miranda warnings
prior to giving consent to search is insufficient, without more,
to render his consent involuntary.  See United States v. Moreno,
897 F.2d 26, 33 (2d Cir. 1990); see, e.g., Garcia, 56 F.3d at
422-23 (Miranda warnings not required, though absence of Miranda
warnings "may be a factor" for consideration).

exists "where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' evidence of a crime will be found in the place to be searched. . . . Further, courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not."  Gaskin, 364 F.3d at 456 (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (alterations in original)).

Additionally, "if probable cause justifies the search of a lawfully stopped automobile, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search," including "all containers within a car, without qualification as to ownership."  Wyoming v. Houghton, 526 U.S. 295, 301 (1999) (upholding search of car and closed containers inside car that was stopped for speeding and driving with faulty brake light after officers noticed a hypodermic syringe in driver's shirt pocket) (emphasis in original) (internal quotation marks omitted); see also Florida v. Jimeno, 500 U.S. 248, 251 (1991); United States v. Gagnon, 373 F.3d 230, 235 (2d Cir. 2004).

At the suppression hearing, the Government anticipates that the evidence will show that Barreras consented to the search

11

of the bag that was in his car.  The Government also anticipates
that the evidence will show that the search was independently
justified based on probable cause that the vehicle would contain
evidence of a crime.

## II.  AFTER AN EVIDENTIARY HEARING, THE COURT SHOULD FIND THAT BARRERAS'S STATEMENTS ARE ADMISSIBLE

Barreras argues that statements he made to law
enforcement officers subsequent to the Terry stop should be
suppressed as the fruits of unlawful searches and unlawful
arrests due to the failure of law enforcement officers to inform
him of his Miranda rights.  See Barreras Notice of Mot. at 14;
Fisher Aff. ¶ 6.[8]  The Government anticipates that the evidence
at the evidentiary hearing will show that both the stop and the
search of Barreras's car were lawful, that after being arrested
Barreras was informed his Miranda rights, and that therefore,
none of the statements the defendant made to law enforcement
should be suppressed.  The Court should conclude that none of
Barreras's statements should be suppressed for failure to inform
him of his Miranda rights or as "fruits" of unlawful searches or
seizures, see, e.g., United States v. Jenkins, 452 F.3d 207, 214-

---

[8] To the extent that Barreras seeks to suppress the
statements made to officers in which he gave consent to search
the bag, Barreras Pretrial Mot. at 14; Fisher Aff. ¶ 5-6, his
motion should be denied.  The voluntariness of those statements
is properly considered as part of the determination of whether
consent to search was given.  See supra 9-10 & n. 5.

15 (2d Cir. 2006) (citing <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963)).

Even assuming there were unlawful searches or seizures, however, the defendant's statements should not be suppressed, because the evidence to be elicited at the suppression hearing will show that those statements were untainted by any alleged illegality. The factors to be considered in determining whether or not the taint of an illegal action has dissipated by the time a statement is given are (1) whether <u>Miranda</u> warnings have been given and waiver obtained; (2) the temporal proximity of the illegal action and the contested statement; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. <u>See</u> <u>United States v. Snype</u>, 441 F.3d 119, 135 (2d Cir. 2006); <u>United States v. Thompson</u>, 35 F.3d 100, 105 (2d Cir. 1994); <u>United States v. Oguns</u>, 921 F.2d 442, 448 (2d Cir. 1990).

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant Barreras's motion for an evidentiary hearing regarding the stop and search of his automobile and his post-arrest statements.

Dated:    White Plains, New York
          January 28, 2008

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York

                         By: _____
                              Nicholas L. McQuaid
                              Assistant United States Attorney
                              (914) 993-1936

14

**AFFIRMATION OF SERVICE**

NICHOLAS L. McQUAID, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. That, on January 28, 2008, I caused copies of the Government's Memorandum of Law in Opposition to Defendants' Pretrial Motion to be delivered by ECF and Federal Express to:

> Lawrence M. Fisher
> 350 Broadway
> 10th Floor
> New York, NY 10013

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:    White Plains, New York
          January 28, 2008


                                    _____
                                    Nicholas L. McQuaid

15

# EXHIBIT
# A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

            - v. -                  :

HECTOR BARRERAS,                    :

                    Defendant.      :

- - - - - - - - - - - - - - - x

ORIGINAL

INDICTMENT

07 Cr.

**07 CRIM. 822**

U.S. DISTRICT COURT
FILED
AUG 3 0 2007
S.D. OF N.Y.

COUNT ONE

The Grand Jury charges:

        1.  On or about July 23, 2007, in the Southern District
of New York, HECTOR BARRERAS, the defendant, unlawfully,
intentionally and knowingly did distribute and possess with intent
to distribute a schedule II controlled substance, to wit,
approximately 5 kilograms and more of mixtures and substances
containing a detectable amount of cocaine.

        (Title 21, United States Code, Sections 812, 841(a)(1) and

                        (b)(1)(A).)

_____              _____
FOREPERSON                           MICHAEL J. GARCIA
                                     United States Attorney

# EXHIBIT B

Approved: _____
          NOLA B. HELLER
          Assistant United States Attorney

Before:   HONORABLE GEORGE A. YANTHIS
          United States Magistrate Judge
          Southern District of New York

7 M1201

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

          - v -                   :

HECTOR BARRERAS,                  :

               Defendant.         :

- - - - - - - - - - - - - - - - - -x

COMPLAINT

Violation of
21 U.S.C. §§ 812,
841(a)(1), 841(b)(1)(A)

COUNTY OF
WESTCHESTER

SOUTHERN DISTRICT OF NEW YORK, ss.:

     MARK KADAN, being duly sworn, deposes and says that he is
a Special Agent with the Drug Enforcement Administration ("DEA"),
and charges as follows:

COUNT ONE

     1.   On or about July 23, 2007, in the Southern
District of New York, HECTOR BARRERAS, the defendant, unlawfully,
intentionally and knowingly did distribute and possess with
intent to distribute a controlled substance, to wit, in excess of
5 kilograms of mixtures and substances containing a detectable
amount of cocaine.

     (Title 21, United States Code, Sections 812, 841(a)(1),
               841(b)(1)(A).)

     The bases for my knowledge and for the foregoing
charge, are, in part, as follows:

     1.   I am a Special Agent with the United States Drug
Enforcement Administration ("DEA"). I have been personally
involved in the investigation of this matter. This affidavit is
based upon my personal knowledge as well as conversations with
other law enforcement agents and my examination of reports and
records. Because this affidavit is being submitted for the
limited purpose of establishing probable cause, it does not
include all the facts that I have learned during the course of my
investigation. Where the contents of documents and the actions,

statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2.    On or about July 23, 2007, in and around Yonkers, New York, other DEA agents and I were attempting to locate an individual suspected of participating in the distribution of narcotics ("the Suspect").  When a black Audi, driven by the Suspect, arrived near a building we were surveilling, the car was approached by one of the DEA agents conducting surveillance.  The Suspect sped down the street, striking two agents' cars and several parked cars.  The Suspect then crashed his car into a tree, abandoned the car, and fled on foot into a nearby wooded area.

3.    Thereafter, other agents and I conducted surveillance in the vicinity of a residence in Yonkers believed to be the Suspect's residence.  One of the surveillance team members observed a white Toyota Avalon parked in the parking lot behind the address we were surveilling.  The officer saw a man later identified as HECTOR BARRERAS, the defendant, sitting in the parked Toyota Avalon.  The officer saw BARRERAS stare at the officer and turn his head to watch where the officer went.  When the officer passed the parking lot again, BARRERAS was still sitting in the Toyota Avalon, and BARRERAS again stared at the officer and turned his head to watch where the officer went. Shortly thereafter, the officer saw BARRERAS drive out of the parking lot.  As BARRERAS passed the officer, BARRERAS again stared at the officer.  The officer also noticed that BARRERAS was not wearing a seatbelt.

4.    The officer and I followed BARRERAS and stopped his car. On the back seat of the car was an orange plastic bag. The officer asked BARRERAS what was inside the bag.  BARRERAS said that the bag contained sneakers and that the officer could look inside the bag.  Inside the orange bag was a silver metallic bag containing five brick-shaped packages wrapped in clear plastic that were made of white powdery substance.  BARRERAS was arrested. A subsequent field test of the powdery substance indicated that it was cocaine, and it weighed approximately 5.67 kilograms.

          WHEREFORE, deponent prays that HECTOR BARRERAS, the
defendants, be imprisoned or bailed, as the case may be.

                              _____
                              MARK KADAN
                              Special Agent
                              Drug Enforcement Administration


Sworn to before me this
24th day of July, 2007


_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK